NIXON *v.* ALLEN.

HOPPER *v.* BRIGHT.

Opinion delivered October 24, 1921.

1. STATUTES—EFFECT OF PARTIAL INVALIDITY.—Where a statute attempts to accomplish two or more objects, and is void as to one of them, it may still be complete and valid as to the other objects; but if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail, unless sufficient remains to effect the object without the aid of the invalid portion.

2. STATUTES—PARTIAL INVALIDITY.—Where the provisions of a statute are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the Legislature would not have passed the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected must fall with them.

3. STATUTES—TITLE OF ACT.—While the title of an act is not controlling, it is proper to be considered in determining the meaning of the law-makers.

3a. STATUTES—CONSTRUCTION.—It is the duty of the court to construe all the words of a statute so as to give them, if possible, some sensible meaning.

4. STATUTES—PARTIAL INVALIDITY.—Acts 1921, No. 264, § 28, "An act to provide for more efficient county government for Pulaski County," provides that if any section, subsection, sentence or phrase in the act shall be held unconstitutional, such decisions shall not affect the validity of the remaining portions of the act, and declares that the Legislature would have passed the remainder of the act.· *Held* that the Legislature meant that if any section, subsection, sentence or phrase in the act should be found unconstitutional and could be eliminated without destroying the integrity of the act as a whole, and leaving an effectual act for a complete and more efficient system of government for Pulaski County, then its purpose was to enact such residual portion of the act.

5. JUDGES—ACT CREATING TWO COUNTY JUDGES.—Acts 1921, No. 264, § 1, providing that there shall be two county judges for Pulaski County, is void as in conflict with § 28, Art. 7, of the Constitution, providing that the county court shall be held by one judge.

6. COUNTIES—BOARD TO FIX SALARIES OF OFFICERS AND CLERKS.—Acts 1921, No. 264, § 8, creating a board to fix the salaries of county officers and the salaries and number of their clerks and employees, is invalid as a delegation of legislative power.

7. STATUTES—PARTIAL INVALIDITY.—Acts 1921, No. 264, relating to the county government of Pulaski County, being invalid as to §§ 1 and 8, is void *in toto;* the various provisions of the act being connected together.

Appeal from Pulaski Chancery Court; *Robert L. Rogers,* Special Chancellor; affirmed.

*Emerson, Donham & Shepherd* and *Carmichael & Brooks,* for appellant Nixon and appellee Bright.

1. The act is separable. There are ten distinct provisions of the act set out in the title thereto. It is always proper to look to the title of an act to determine its meaning. 138 Ark. 387; 124 Ark. 473. If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. 111 Ark. 108; 46 Ark. 329; 37 Ark. 356; 53 Ark. 490; 64 Ark. 555; 63 Ark. 576; 126 Ark. 263; 138 Ark. 386.

2. The Legislature had the power to declare the act separable. 129 Ark. 548; 138 Ark. 556; 139 Ark. 160; 139 Ark. 577.

3.  None of the provisions of the act is void, unless it be the section providing for the two county judges is unconstitutional, and, if so, the act being severable, the remainder would stand in full force. However, this provision does not contravene § 28, art. 7 of the Constitution, nor does this section limit the number of county judges to one. 60 Ark. 343. It means that only one judge can hold the county court, which is to say that the judges do not sit *en banc*. Sec. 8 of the act, which creates a board for allowing additional deputies, etc., is not a delegation by the Legislature of the power to legislate. The same authority has been approved numerous times in levee districts, etc., wherein the board is authorized to employ clerks and fix their salaries. As to powers delegated to a board, see 96 Ark. 419.

4.  The act is not subject to referendum. 104 Ark. 583; 104 Ark. 510; 103 Ark. 48; 105 Ark. 380; 110 Ark. 528; 106 Ark. 63; 117 Ark. 474; 106 Ark. 504; 139 Ark. 178; 117 Ark. 266; 133 Ark. 380.

*J. S. Utley,* Attorney General; *Poe, Gannaway & Poe* and *J. C. Marshall,* for appellee Allen and appellant Hopper.

The act is unconstitutional in that it creates an additional county and probate court and a common pleas court, and provides for an additional judge to hold these courts. Const. art 7, § § 28, 29; 60 Ark. 343.

It is unconstitutional also in that it provides for a board which shall have power to fix the number of deputies and their compensation, contingent expenses and allowances of the county officers. The Legislature alone has this power, and cannot delegate it to another. Const. Art. 16, Sec. 4; 89 Ark. 456; 40 Ark. 100; Throop on Public Offices, § 500. There is no analogy between county offices, controlled by the Constitution, and levee boards, etc., not controlled by the Constitution.

The act is void in a number of particulars, and these void sections are so inter-related that they invalidate the whole act. 138 Ark. 381; 13 Ark. 763; 49 Ark. 110;

75 Ark. 542; 55 L. R. A. 740; 2 L. R. A. (N. S.) 653. This is true, even though the act contains a provision to the contrary, as the dominant feature of the act is unconstitutional. 129 Ark. 549; 6 R. C. L. 123; 65 Wash. 156; 144 Ark. 38.

The act is referable. 133 Ark. 380; Acts 1911, p. 582.

WOOD, J. These appeals are from decrees rendered by R. L. Rogers, special chancellor, declaring void act No. 264 of the Acts of 1921. The title of the act is: "An Act to provide For More Efficient County Government for Pulaski County: For Two County Judges: For Separating the Offices of Sheriff and Collector; For a County Comptroller; For a County Purchasing Agent; For Chief Deputies; For County Officers; For a Board for Approving Additional Deputies; For Fixing the Salaries of County Officers and of their Deputies; For a Court of Common Pleas; For Fixing the Court Costs in the Circuit and Chancery Courts; and for Other Purposes."

Section 1 provides that there shall be two county judges for Pulaski County; one designated as county judge and the other probate judge.

Section 2 provides that the Governor shall appoint the probate judge, who shall hold office until his successor is elected and qualified.

Sections 3, 4 and 5 confer power upon the county judge, by and with the advice and consent of the grand jury, to appoint a county comptroller and a county purchasing agent. These several sections prescribe the duties and qualifications respectively of the comptroller and the purchasing agent. The comptroller's "term of office" is made concurrent with that of the county judge appointing him. He takes an oath of office and is required to furnish a bond in the sum of $25,000 for the faithful performance of his duties. He prepares a county budget, makes monthly reports of the county finances, expenses and obligations. He keeps a record of county property and checks the emoluments of county

and township officers, making an annual audit of the taxes of the county, and, among other things, is "to perform any service that may be required of him by the county judge or by the grand jury," and the county court is prohibited from considering any claim until it has first been presented to the comptroller for his approval or disapproval.

Sec. 6 makes offices of sheriff and collector separate and distinct, and provides that at the next general election a sheriff and collector shall be elected. It provides for bonds for these respective officers, and provides that, until January 1, 1923, the sheriff shall continue to perform the duties and receive the same compensation as he is now performing and receiving as sheriff and collector.

Sec. 7 provides for deputies for the county officers and a head clerk in the collector's office. The chief deputy in the sheriff's and collector's office and the head clerk in the collector's office to receive the same salary as is now provided by law.

By § 8 the three circuit judges, the chancellor and the county judge "shall constitute a board for allowing additional deputies to the county officers and fixing their compensation," but this board "shall not have authority to decrease the present deputies and clerical force, either in number or compensation, and the contingent expenses and allowances of the officers as now provided by law, without the concurrence of the quorum court, but they shall have authority to increase the compensation of the present force, contingent expenses and allowances of the officers as now provided by law; they may also create additional contingent expenses and allowances for the various officers. The county judge shall be chairman of the board. On written petition of any county officer for an additional deputy or deputies, additional contingent expenses and allowances, the board shall have a public hearing and

shall grant or refuse the petition as the public interest may require. Any petition granted by said board shall be allowed and ordered paid by the county court.''

Sec. 9 prescribed certain duties of the county treasurer.

Sec. 10 provides that §§ 1043 and 1017 of Crawford & Moses' Digest shall not apply to Pulaski County, and that section 1042 shall not apply in so far as it requires the collector to visit the voting places of the county to collect taxes.

Sec. 11 prescribes certain duties of the county officers, except the collector, with reference to the filing of reports of the funds and emoluments collected by them and making settlements.

Sec. 12 provides that § 10 of act 145 of the Acts of 1917, approved February 28, 1917, shall not apply to the offices of county judge, probate judge, comptroller, purchasing agent, or sheriff.

Sec. 13 provides penalties for failure to comply with the provisions of the act.

Sec. 14 designates the salaries which the county officers and their deputies shall receive, and, after specifying the amounts, it is provided that ''the collector shall, in addition to his salary, be allowed to retain as part of the emoluments of his office all fees and costs for the collection of delinquent taxes, as now provided by law.''

Sec. 15 provides ''that the court costs for each action, suit or proceeding in the circuit and chancery courts which shall be paid in advance by the party instituting such action or proceeding, shall be as follows: In the circuit court, for each appeal from an inferior court, $7.50; all other actions or proceedings $10.00. In the chancery court, for each divorce suit, and each *ex parte* proceeding, $10.00; for all other suits or proceedings, $15.00.'' Out of the clerk's costs in the circuit and chancery courts the sum of fifty cents shall be paid into a library fund to be kept by the clerk of the chancery court, and expended by him, under the direction of

the chancellor, in providing and maintaining a law library for the use of the judges, county officers and practicing attorneys. The various courts are given the power to tax and adjust the cost between litigants in all cases.

Sec. 16 creates a court of common pleas to be held quarterly by the county judge.

Secs. 17 to 26, inclusive, define the jurisdiction of the court and the duties of the clerk and sheriff in connection therewith, and prescribe rules of practice governing same.

Sec. 21 is as follows: ''The judge of the probate court shall be judge of the court of common pleas.''

Sec. 27 provides for an additional contingent expense to be allowed the sheriff in case of riots, uprisings and emergencies, the application to be made to and approved by either of the judges of the board mentioned in section 8, which, upon such allowance and approval, ''shall be allowed and ordered paid by the county court out of any available funds of the county.''

Sec. 28 is as follows: ''If any section, sub-section, sentence or phrase in this act shall be held unconstitutional, such decisions shall not affect the validity of the remaining portions of the act. The Legislature hereby declares that it would have passed the remainder of said act, and each and every part thereof, irrespective of such unconstitutional part.''

By the concluding section 29 the law is ''made supplemental to existing laws, and shall not operate to repeal any existing laws except to the extent that it may conflict with this act, which shall take effect and be in force from and after its passage.''

1. We will discuss the act in the order presented in the brief of learned counsel for appellants. They ask first: Is the act severable? This court, in the case of *Oliver* v. *Southern Trust Co.*, 138 Ark. 381, 386, 387, announced the general rule upon the subject by quoting at length from Cooley's Constitutional Limitations, 6th

Ed. p. 210. A portion of that quotation is as follows: "If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail, unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the Legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them." See also *Davis* v. *State,* 126 Ark. 260-63; *Snetzer* v. *Gregg,* 129 Ark. 542; *Skipper* v. *Street Imp. Dist. No.* 1, 144 Ark. 38-44.

The purpose of this act, as expressed in the first sentence of its title, is: "To provide for more efficient county government for Pulaski County." After thus declaring the purpose, the title enumerates the various particular methods by which the "more efficient government" is to be effected. The act, as shown by its title as well as the subject-matter of its various sections, was intended to be, and is, if valid, a comprehensive and complete plan of government for the county of Pulaski. So many of the sections of the act are interrelated and dependent upon each other, we are convinced that, if the Legislature had known in advance that several of the more important sections would be eliminated because of their unconstitutionality, it would not have enacted the remaining portions of the act. For some of the provisions of this act were already the law. To illustrate, this act fixes the salary of the county assessor at $4,000, and that was his salary when the act was passed. Likewise it fixes the salary of the collector at the same as now provided by law. The act under review provides that the county judge, with the advice and consent of the grand jury, shall appoint

a county comptroller. The county judge, with the advice and consent of the grand jury, had the power when this act was passed to select and appoint an auditor.

We mention these simply as illustrations, and there may be others, to show that the purpose of the Legislature by the act under review was to enact a complete scheme for the government of the county, which was to stand or fall as a whole, and which could not be separated into parts. This is undoubtedly the correct conclusion if the intention of the law-makers is to be gathered alone from a consideration of the title and the subject-matter contained in the various sections of the act, and without regard to section 28. The title of the act should be paraphrased and construed as if it read: "We intend by this act to provide for more efficient government for Pulaski County in the following particulars." Then, after enumerating the particulars that were to be embraced in the law, it concludes: "And for other purposes." The concluding clause, "and for other purposes," means that any other purposes not enumerated, but found in the body of the act, would be purposes of a like nature with those already mentioned to effectuate or complete the system of government proposed. While the title of the act is not controlling, it is proper to consider it in determining the meaning of the law-makers. *School Dist.* v. *Howell,* 124 Ark. 475: *Oliver* v. *Southern Trust Co., supra.*

2. Counsel for appellants, in the second place, argue that "the Legislature had the power to declare the act severable," and that it has done so by section 28, which we here again set out:

"If any section, sub-section, sentence or phrase in this act shall be held unconstitutional, such decisions shall not affect the validity of the remaining portions of the act. The Legislature hereby declares that it would have passed the remainder of said act, and each and every part thereof, irrespective of such unconstitutional part."

In several of our cases, we have recognized the doctrine that where statutes are worded in a manner to justify it the Legislature may express its will that the provisions of such statute declared by the court to be valid shall stand, notwithstanding other provisions in the same statute may be declared unconstitutional, and that the courts will respect and carry out such legislative declaration. *Snetzer* v. *Gregg, supra; Sallee* v. *Dalton,* 138 Ark. 549; *Milwee* v. *Tribble,* 139 Ark. 574.

We need not decide, and do not decide, whether it was in the power of the Legislature, by the sweeping language used in section 28, to validate each and every part of this act which might constitute a valid law when standing alone and disconnected from such other parts as might be found unconstitutional. We do not believe that the Legislature intended by the language of the 28th section to declare that it would have passed each and every part of the act, even though several of its outstanding provisions were unconstitutional and stricken out. For the act, as we have seen, was intended as a whole to provide a complete and more efficient system of county government. If such strict and literal meaning is given to the language of section 28, then the Legislature "doth protest too much, methinks." For, if such were its meaning, it has impeached itself for doing, as we have shown in certain particulars the vain and nonsensical thing of enacting or re-enacting laws already existing and covering precisely the same subject matter. Would the enactment of such laws provide for a more efficient government for Pulaski County? Certainly not.

It is our duty to construe all the words of the statute so as to give them, if possible, some sensible meaning. Therefore, we conclude that the Legislature by the broad language used in § 28 meant that "if any section, sub-section, sentence or phrase" in the act were found unconstitutional and could be eliminated without destroying the integrity of the act as a whole and leav-

ing an effectual act for a complete and more efficient system of government for Pulaski County, then its purpose was to enact such residual portions of the act.

3.   This brings us to the question:  "Is any part of the act unconstitutional?"

Sec. 28 of article 7 of our Constitution is as follows:  "The county courts shall have exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, ferries, paupers, bastardy, vagrants, the apprenticeship of minors, the disbursement of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties.  The county court shall be held by one judge, except in cases otherwise herein provided."  The exception has reference to the quorum court.

The first section of the act under review providing that there shall be two county judges for Pulaski County, "one to be designated county judge" and the other "probate judge," clearly contravenes the above provision of the Constitution.  Under the Constitution there can not be more than one county judge. The limitation is found in the numeral "one" in the clause, "The county court shall be held by one judge," and likewise in the very nature of the jurisdiction of such court and the functions of its presiding judge.   *Martin* v. *State,* 60 Ark.   343.   The county judge is the *governor,* so to speak, in the affairs of the county in the matters over which the county courts are given exclusive jurisdiction. He is given supreme or exclusive original authority over the matters enumerated in the Constitution, and such authority, in the very nature of the case, must be exercised by one presiding and controlling genius.   There is no room under the Constitution for a division of authority and responsibility in the office of county judge. The idea that there can be two county judges, either one of whom could preside over the county court, would be incompatible with the intention of the framers of the Constitution in conferring jurisdiction and power upon

such court and its judge. The functions of this office in its control over taxes, roads, bridges, and other matters of local concern and internal improvement, are indivisible and can only be exercised by one person.

To avoid cross purposes and inextricable confusion in the government of the affairs of the county enumerated in article 7, sec. 28 of the Constitution, supreme or exclusive original authority is lodged in one functionary—the county judge. It may be well to note here some of the incongruities of this act that forcibly illustrate the hopeless muddle into which the government of the affairs of the county would be plunged, grounded upon the notion that they can be administered by two county judges. The act provides for two county judges and furnishes no method for determining which of these judges shall hold the court. It provides that the governor shall appoint a probate judge, but there cannot be any vacancy in the office of the probate judge as long as there is a county judge who must, *ex officio,* fill it. If the Governor in advance of the next general election could appoint a probate judge, after that time only the county judge, and not the probate, could be elected, and who would have the power then to say which one of the county judges should preside over the county court and which over the probate court? The act suggests no method for determining.

Sec. 16 of the act creates a court of common pleas to be held by the "county judge," while section 21 provides that "the judge of the probate court shall be the judge of the court of common pleas." Sec. 32 of article 7 of our Constitution provides that the General Assembly may authorize the judge of the county court to hold a court of common pleas. Sec. 21 of the act under review, conferring power upon the judge of the probate court to perform that function, is therefore void; and if this section were stricken out and section 16 allowed to stand, and the section creating the two county judges were also allowed to stand, then which one of these judges would hold the court of common pleas? If alternately, when and how?

Sec. 3 gives the county judge the power to appoint a county comptroller. Section 5 gives the county judge the power to appoint a purchasing agent. Section 8 makes the county judge the chairman of the county board, and section 15 gives the common pleas court power to tax and adjust cost between litigants in all cases before that court. If there were two county judges, which one of them is to perform these several and various functions? Who, under the act, has the power to determine which one of the county judges shall do so? The act is silent on this subject. If there could be two county judges, both must be elected, and elected as county judges at the same time, and both must have equal authority and perform the same functions under the act.

Now, who in this mix-up would have the power to say which one of the county judges should exercise the several functions imposed upon the county judge in various sections of this act? Could the two county judges voluntarily settle these matters between themselves, or, in the event they should not agree concerning these things, where is the tribunal to settle the difference between them and to have these important duties performed? The act furnishes no answer, and none could be given. It is manifest from the foregoing that it is wholly beyond the power of the Legislature to create two county judges.

Another salient provision in this plan of county government is contained in section 8. That section provides that the three circuit judges, the chancellor, and the county judge shall constitute a board. To that board is given power to allow additional deputies to county officers and to fix their compensation, and, with the concurrence of the quorum court, to decrease the number of deputies and clerical force and their compensation as well as the contingent expenses and allowances of the officers as now provided by law. To this board is given the authority, without the concurrence of the quorum court, to increase the compensation of the present officers, contingent expenses and

allowances of the officers, as now provided by law, and also to create additional expenses and allowances for the various officers. On written petition of any officer for additional deputies, contingent expenses and allowances, the board shall have a public hearing and refuse or grant the petition as the public interests may require. Any petition granted by such board "shall be allowed and ordered paid by the county court." Sec. 14 of the act provides a complete schedule of salaries for the various officers of the county and their chief deputies and for the comptroller and the purchasing agent.

Article 16, section 4, of our Constitution provides: "The General Assembly shall fix the salaries and fees of all officers in the State, and no greater salary or fee than that fixed by law shall be paid to any officer, employee, or other person, or at any rate other than par value; and the number and salaries of the clerks and employees of the different departments of the State shall be fixed by law." By article 19, sec. 23 of our Constitution "no officer of any county shall receive directly or indirectly for salary, fees and perquisites more than $5,000 per annum and all above this sum shall be paid into the county treasury."

It will be observed that the board created by section 8, with the concurrence of the quorum court, has the power to decrease the number as well as the compensation of the deputies of the officers, which in section 14 of the same act are designated and their annual salaries fixed at a specified amount. The board also has the power to decrease, with the concurrence of the quorum court, expenses and allowances of officers as now provided by law, and, without the concurrence of the quorum court, this board is given the power "to increase the compensation of the present force," which would include the chief deputies, and also the contingent expenses and allowances of the various officers as now provided by law; and also may create additional contingent expenses and allowances for all

the various officers. The power to fix the salaries and fees of all officers in the State, and the number of their clerks and employees and their salaries, is a function, which, within the limits of the Constitution, is lodged in the supreme law-making power of the State—the Legislature. *Cain* v. *Woodruff County,* 89 Ark. 456; *Humphrey* v. *Sadler,* 40 Ark. 100; Throop on Public Officers, § 500. The General Assembly cannot delegate this legislative power to any individual, officer, or board.

We conclude, therefore, that section 8 of this act is repugnant to article 16, section 4 of our Constitution. Article 16, section 4, together with article 19, section 23, were intended by the framers of our organic law to forestall, if possible, any extortion, extravagance, or corruption on the part of those entrusted with the administration of public office, and to promote the general welfare by protecting the people from exorbitant taxation in order to meet the necessary burdens of government. A critical analysis of the various provisions of this act will disclose that sections 1 and 8 touch at some angle nearly all of the other provisions of the act except those embodied in the two last sections. Sections 1 and 8 are to this act as is the hub to a wheel or the foundation pillars to a building. Since these two sections fall under the condemnation of the Constitution, they must be removed from the act, and thereby the whole fabric of the county government built up by the framers of this law necessarily falls to pieces. We need not pursue the subject further. The decrees of the special chancellor are in all things correct, and they are therefore affirmed.