Cone *v.* Garner.

Opinion delivered November 14, 1927.

1. TAXATION—FEES OF ASSESSOR—LIABILITY OF STATE.—Acts 1889, p. 12, requiring the State to pay half of the county assessor's compensation, means either salary or fees, and may include also the expenses of making land assessments, half of which the State must pay under Acts 1919, p. 348.

2. TAXATION—AUTHORITY TO ASSESSORS TO EMPLOY ADDITIONAL DEPUTIES.—Acts 1925, p. 160, § 2, authorizing the county court, on application of the assessor, to grant authority to employ additional deputies or assistants at salaries to be fixed by the assessor, is void as delegating the power of the Legislature.

3.  STATUTES—SALARY OF COUNTY ASSESSORS—EFFECT OF PARTIAL
    INVALIDITY.—Acts 1925, c. 51, providing for the assessor's salary
    and for the number of deputies with their salary, is a complete
    act without § 2, whose invalidity does not affect the remainder
    of the act.

4.  STATUTES—PARTIAL INVALIDITY.—Where the unconstitutional por-
    tion of an act is severable, and there is a complete act without
    it, the fact that one section or one portion of it violates the Con-
    stitution does not necessarily invalidate the entire act.

5.  CONSTITUTIONAL LAW—LOCAL BILL.—Acts 1925, c. 51, § 2, fixing
    the salary of a county assessor and authorizing the employment
    of deputies, though a local act, is not invalid, having been passed
    prior to the adoption of constitutional amendment prohibiting
    the passage of local bills.

6.  TAXATION—COMPENSATION OF COUNTY ASSESSOR.—Although Acts
    1925, c. 51, § 3, requires all fees, penalties, and other compensa-
    tion then allowed the county assessor to be paid to the county
    treasurer, the assessor's necessary expenses incurred in the per-
    formance of his official duties, are part of his compensation, half
    of which must be paid by the State under Acts 1889, p. 12, and
    Acts 1919, p. 348.

7.  STATUTES—GERMANE AMENDMENT.—Acts 1919, p. 348, which abol-
    ished the township boards of assessment in certain counties and
    created county boards of equalization, in providing that half
    of the expense of the real estate assessment shall be paid by the
    State and the other half by the county, is not such an alteration
    as to change the purpose of the bill, contrary to Const., art. 5,
    § 21.

8.  STATUTES—AMENDMENT.—The purpose of art. 5, § 21, of the Con-
    stitution, prohibiting the altering or amending of a bill on its
    passage through either house so as to change its purpose, was to
    prohibit amendments not germane to the legislation expressed in
    the title of the act amended.

9.  TAXATION—CONSTITUTIONAL LIMIT OF SALARY OF ASSESSOR.—Const.,
    art. 19, § 23, limiting the salaries of county and State officers,
    does not invalidate Acts 1889, p. 12, and Acts 1919, p. 348, requir-
    ing the State to pay half of the compensation and expenses of a
    county assessor for making assessments, since the salary of such
    officer is fixed at a certain amount, and the excess thereof can-
    not be retained by the assessor.

10. MANDAMUS—PRESUMPTION IN ABSENCE OF CONTRARY SHOWING.—
    On appeal from an order requiring the State to pay half of the
    compensation and expenses of the county assessor for making
    assessments, under Acts 1925, c. 51, § 2, which section is invalid,
    in the absence of a showing in the record that part of the
    assessor's expense was because of assistants or deputies employed

under § 2, it will be assumed on appeal that the compensation or expense in question was legally incurred.

11. CONSTITUTIONAL LAW—POLICY OF LEGISLATURE.—The policy of legislation and its expediency are questions peculiarly within the province of the Legislature, and the courts cannot hold an act void because it may be thought to be bad policy.

Appeal from Pulaski Circuit Court, Second Division; *Richard M. Mann*, Judge; affirmed.

*H. W. Applegate*, Attorney General, and *John L. Carter*, Assistant, for appellant.

*Emerson, Donham & Fulk*, for appellee.

MEHAFFY, J. The appellee filed in the Pulaski Circuit Court the following petition for a writ of mandamus:

"Plaintiff is the duly elected, qualified, commissioned and acting tax assessor of Pulaski County, Arkansas, and the defendant is the duly elected, qualified, commissioned and acting Auditor of State for the State of Arkansas.

"Under the provisions of act 51 of the Acts of the General Assembly for the year 1925, fixing the compensation to be paid assessors in counties having a population in excess of 75,000 persons as shown by the last Federal census, plaintiff and his assistants are entitled to the sum of $25,000 for compensation in making the assessment of the real and personal property for taxation in Pulaski County for the year 1927; and, under the provisions of act 14 of the Acts of 1889, one-half of the assessor's compensation for making the assessment of real and personal property is required to be paid by the State of Arkansas, and the other half by the county. Under the provisions of act 477 of the Acts of 1919 it is specifically provided that one-half of the expense of the real estate assessment shall be paid by the State and one-half by the county, which act further provides that the county court shall draw its warrant on the county treasurer for one-half the amount due the assessor, and that it shall, at the same time, certify to the Auditor of State the amount due said assessor on the part of the State, the same being

one-half of the total amount due said assessor; and that thereupon the State Auditor shall draw his warrant on the State Treasurer for said amount.

"Plaintiff states that the expense of assessing the real estate in Pulaski County for the year 1927 was $16,185, one-half of which has been paid by Pulaski County. Plaintiff further states that, on August 29, 1927, the county court of Pulaski County, pursuant to the provisions of the above statutes, certified to the defendant, as State Auditor, the amount due plaintiff from the State of Arkansas for making said assessment in the sum of $8,092.50, a certified copy of said order and certificate being attached hereto, marked exhibit A and made a part hereof; that plaintiff presented said certificate to the Arkansas Tax Commission, which said Commission approved same for payment in the sum of $8,092.50, as shown by the indorsement thereon, and that thereafter plaintiff presented said certificate to the defendant and requested him to draw his warrant on the State Treasurer in favor of plaintiff for said amount, but that said defendant declined and refused to do so, and continues to decline and refuse to draw his warrant on the State Treasurer in favor of plaintiff, for the expense of making said assessment, for any sum in excess of $75."

There was a prayer for a writ of mandamus ordering appellant to issue his warrant for one-half the expense of assessing the real estate in Pulaski County.

Attached to and made a part of the petition for mandamus was the following order of the Pulaski County Court:

"On this day is presented to the court the duly verified claim of W. H. Garner, assessor of Pulaski County, Arkansas, against Pulaski County and the State of Arkansas, in the sum of $16,185, for services rendered by him in making the assessment of real property for taxation in said county for the year 1927, and, upon examination and consideration of said claim, it appearing to the court that the same is just and correct, it is ordered that the same be and is hereby allowed and ordered paid,

one-half the amount thereof, or the sum of $8,092.50, to be paid by the State of Arkansas, and one-half the amount thereof, or the sum of $8,092.50, to be paid by the county of Pulaski, and the clerk of this court is ordered and directed to draw his warrant on the treasurer of Pulaski County, in favor of said W. H. Garner, for the sum of $8,092.50, payable out of any money in the treasury appropriated for the expense of 'assessment and tax-books,' and it is further ordered that a duly certified copy of this order be delivered to the Auditor of the State of Arkansas, as his authority for payment by him to the said W. H. Garner of the sum of $8,092.50, the amount due by said State for making said assessment.''

The above order was certified to by the clerk as a true and correct copy of the order of court.

The Attorney General filed the following demurrer:

''Comes the defendant, J. Carroll Cone, Auditor of State, and demurs to the petition for writ of mandamus in the above styled cause, and for cause states that the complaint does not state facts sufficient to constitute a cause of action.''

Thereafter the circuit court entered the following judgment:

''On this day comes the plaintiff by his attorneys, Emerson, Donham & Fulk, and comes the defendant by Honorable John L. Carter, Assistant Attorney General; and the defendant herein files a demurrer to plaintiff's petition, which demurrer, being duly presented and argued before the court, and the court being well and sufficiently advised in the premises, doth overrule same, to which action of the court in overruling said demurrer defendant at the time duly excepted, and asked that his exception be noted of record, which is done. Whereupon, the defendant electing to stand upon his demurrer, and declining to plead further, the cause was submitted to the court upon the verified petition of plaintiff and exhibits thereto; and the court, after hearing argument of counsel, and being well and sufficiently advised in the

premises, is of the opinion that the prayer of said petition should be granted.

"It is therefore by the court considered, ordered and adjudged that the defendant, J. Carroll Cone, as State Auditor, be and he is hereby directed to draw his warrant upon the State Treasurer in favor of plaintiff for the sum of $8,092.50, for one-half the expense of assessing real estate in Pulaski County, Arkansas, for the year 1927, and deliver same to plaintiff."

To reverse this judgment the State prosecutes this appeal.

Appellant contends that the act of the Legislature under which appellee began the action provides for the payment of one-half of the assessor's compensation, whereas the petitioner seeks to collect one-half of the expenses.

Compensation which is used in the sense of reimbursement means either salary or fees, and it may also include expenses.

It was held by the New Jersey court that the surplus of moneys furnished the sheriff by the county for the policing of the jail, after paying the salaries of the deputy keepers, comprised compensation for services rendered as custodian of the jail, and therefore, under the above act of 1905, belonged to the county. *Board of Chosen Freeholders of Hudson County* v. *Kaiser,* 75 N. J. Law 9, 69 Atl. 25.

It was held by the Kentucky court that compensation included all amounts paid for any services required to be performed by the officer.

The word "compensation," as used in the session laws of 1909, chapter 240, providing that county game wardens shall receive such compensation as the State Game Warden shall determine, but shall not exceed $50 per month, includes amounts paid for expenses incurred as well as for services rendered, and such compensation cannot in any one month exceed $50. *Jenkins* v. *Holstrom,* 30 S. D. 192, 138 N. W. 12.

There are numbers of cases in Words & Phrases, from which we have copied above, which show that salary or compensation means whatever the officer may receive, including the expenses incurred by him, and, when he incurs expenses in assessing property or in any other way in the performance of his official duties, reimbursing him for the money thus expended is compensation, the same as salary or fees received by him.

It is next contended by the State that § 2 of act 51 of 1925 is void, because it authorizes the county court, on application of the assessor, to grant authority to employ additional deputies or assistants at salaries to be fixed by the assessor, and cites the case of *Nixon* v. *Allen,* 150 Ark. 244, 234 S. W. 45. The court there said: "The power to fix the salaries and fees of all officers in the State, and the number of their clerks and employees and their salaries, is a function which, within the limits of the Constitution, is lodged in the supreme lawmaking power of the State—the Legislature." The court cites numerous authorities supporting this declaration of law.

Section 2, as contended by the Attorney General, we think, is void, and the reason given by the court in the case of *Nixon* v. *Allen, supra,* applies equally in this case to § 2.

Act 51 of the Acts of 1925, however, is a complete act without § 2. It provides for the assessor's salary, and for the number of deputies with their salaries, and is a complete act without § 2, and, since that is true, the fact that § 2 is void does not affect the remainder of the act.

This court has many times held that, where the unconstitutional portion of an act was severable, where there was a complete act without it, the fact that one section or one portion of it violated the Constitution did not necessarily make invalid the entire act, and, in the case of *Nixon* v. *Allen, supra,* this court said (quoting from Cooley's Constitutional Limitations):

"If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But, if its

purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail, unless sufficient remains to effect the object without the aid of the invalid portion. And, if they are so mutually connected with and dependent on each other as conditions, considerations, or compensations for each other, as to warrant the belief that the Legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected, must fall with them.''

The court, in addition to quoting from Cooley's Constitutional Limitations, cites a number of authorities.

It will readily be seen by an inspection of act 51 that § 2 is not dependent, conditional or necessarily connected with the rest of the act in any way.

It is next contended by the Attorney General that, notwithstanding the Legislature undertook to make this a general act, it is purely local, and calls attention to the case of *Ark-Ash Lumber Co.* v. *Pride & Fairley,* 162 Ark. 235, 258 S. W. 335. The Attorney General, however, does not contend that the act is void, even if a local act, and we think it is immaterial whether the act was general or local. It was passed prior to the adoption of the constitutional amendment prohibiting the Legislature from passing local bills, and is valid, even though a local bill.

Appellant calls attention to § 3 of the act, which provides that ''all fees, penalties and other compensation now allowed such assessor shall be by him paid quarterly unto the county treasurer, taking his receipt therefor, one copy of which receipt shall be retained by the treasurer, one placed on file with the county clerk, and one retained by said assessor.'' He then argues that it is clear that it was not the purpose of the Legislature to abolish fees, penalties, etc.

That is true with reference to all, or nearly all, of the acts of the Legislature fixing salaries for county officers, instead of fees. In all cases they are required to collect the same fees that the law required them to

collect before the passage of the law putting them on a salary and to turn the fees so collected over to the county treasurer. In some instances the law requires that they be paid from the fees collected; in others they are paid salaries by the county without regard to the amount of fees collected. The fees collected might be more or less than the salary fixed by the Legislature.

We think, however, that the Legislature, in passing the law, intended that one-half of the compensation should be paid by the State, and that it is wholly immaterial whether the officer's compensation was fees or salary, and, whether fees or salary, the necessary expenses incurred in the performance of his official duties are part of the compensation.

It is next contended by appellant that the act of 1919 violates § 21 of article 5 of the Constitution of Arkansas, which provides that "no law shall be passed except by bill, and no bill shall be so altered or amended on its passage through either House as to change its purpose." And it is then argued that there was an amendment providing that one-half the expenses, etc. The appellant argues that the purpose of the original act, as reflected by the title of the act, as well as the act itself, was to abolish township boards of assessment and valuation, and to create a board of equalization in all counties of the State having a population in excess of 75,000 persons, and that there is nothing in the act which has to do with the duties of assessors, but the act deals exclusively with the question of the creation, powers and duties of the board of equalization.

One of the duties of the equalization board was to fix the valuation of property in the county, that is, to assess the property.

Subdivision (1) of § 6 of act 177 of 1919 provides: "It shall raise the valuation of such property as, in the opinion of the board, has been returned below its true value, to such sum or amount as may be deemed its true value. Members of the board may actually enter upon

and view any property as to the true value of which they may not be fully satisfied."

The next subdivision provides for reducing valuations. Then there is a provision for appeals.

All these provisions have to do with the assessment of property in the county.

But our Constitution does not provide, like many constitutions, that each bill shall have a title in which shall be expressly stated the purpose of the bill, or any words to that effect.

In a very recent case this court said: "It is obvious that the title is not as broad as the act, but there is no provision in our Constitution to the effect that the caption of an act must indicate all the subject-matter embraced in the act itself." *Huff* v. *Udey,* 173 Ark. 464, 292 S. W. 693.

We think the amendment was germane, and that the purpose of the act was not altered or amended on its passage as to change its original purpose.

It is said that the object of this section of the Constitution was that the Senate and House of Representatives of the State might not be hampered or embarrassed in amending and perfecting their bills and thus be driven to accomplish by a number of bills that which might well be accomplished by one bill, but the purpose of the section was to forbid amendments which should not be germane to the subject of legislation expressed in the title of the act which it purports to amend. *Hickey* v. *State,* 114 Ark. 526, 170 S. W. 562.

It is next contended that, if it were admitted that the State could be made to pay half the salaries, the expenses in excess of such salaries would be in conflict with article 19, § 23, of the Constitution. The fact that the State pays it, or the county pays it, would certainly make no difference, because the officer's salary is fixed at a certain amount, and he cannot lawfully retain anything above the amount fixed by the Constitution. His expenses, however, might be more than the constitutional limitation as to salary, and certainly he would be

entitled to compensation for expenses and to the salary fixed by the Legislature not in excess of that allowed by the Constitution.

While we have held that § 2 is void, there is nothing in the pleadings and nothing in the record anywhere to indicate that any part of the expense of the assessor is because of any assistants or deputies provided for in § 2 of the act, and, in the absence of anything in the records to the contrary, we, of course, assume that the compensation or expense is that incurred under the act, which we hold is valid, except § 2.

The Legislature evidently intended to provide for one-half of the compensation to be paid by the State, and it had authority so to provide. It also has authority at any time to repeal or modify this law; if it is unjust or unfair, the Legislature can, and doubtless will, remedy it. The courts cannot hold an act void because it may be thought to be bad policy. The policy of the legislation, the expediency of it, are questions peculiarly within the province of the lawmaking power.

It follows from what we have said that the judgment of the circuit court must be affirmed, and it is so ordered.