McGEE v. MAINARD.

4-7702 . 188 S. W. 2d 635

Opinion delivered July 9, 1945.

1002

*Mark E. Woolsey* and *Carter & Taylor,* for appellant.

*Greer Nichols* and *Yates & Yates,* for appellee.

HOLT, J. This is an ejectment suit involving two tracts of land in the Ozark District of Franklin county. One tract, the northwest quarter of the northwest quarter of section 35, township 10 north, range 27 west, was forfeited for the taxes for 1931 and struck off and sold to the State on June 13, 1932. The State's title was confirmed in December, 1936, and on December 17, 1937, this tract was sold by the State to appellant. The other tract, the southwest quarter of the northwest quarter of the same section, township and range, forfeited for the taxes of 1933, and was sold to the State in 1934. Thereafter, on December 18, 1937, this tract was sold by the State to appellant and in June, 1938, title was confirmed in the State.

On August 26, 1944, appellant, Loyd McGee, filed complaint against appellees, in which he alleged ownership of the two tracts of land in question, basing his title on the two State deeds and confirmation decrees, *supra*, all being made exhibits to his complaint. Appellees answered with a general denial and affirmatively alleged that the tax sales and appellant's tax deeds based thereon were void because of excessive and illegal tax levies and for excessive costs and that the confirmation decrees did not cure these defects since they related to the power to sell.

There was a motion by appellant to transfer to equity which the trial court denied over appellant's objection and exceptions. Upon a trial, at the conclusion of all the testimony, the court, on its own motion, took the case from the jury and directed a verdict for appellees. This appeal followed.

For reversal, appellant says: "(1) the trial court erred in holding that appellant's tax deeds were void and in cancelling same and in refusing to award appellant possession of the lands; (2) the court erred in fixing the amount of appellant's recovery and lien; and (3) the court erred in refusing to transfer the cause to equity."

### (1)

Appellees successfully contended below, and argue here, that there was unlawfully assessed and collected against each of the tracts of land here a tax of 5 mills for the City of Ozark, which voided the sales, the State lacking the power to sell. In support of this contention, appellees introduced two witnesses, the first, Claude Russell, City Recorder, while holding the minute book of the City Council of Ozark in his hands, testified in substance that he had examined the records as reflected by this minute book and failed to find any 5-mill city tax levied for the year 1931. He testified that no such levy was made on February 3, 1931, April 14, June 2, July 7, July 15, August 4, October 6, November, December 1, and January 5, 1932. He further testified that he did not become city recorder until 1944 and that the book from

which he was testifying contained the minutes of many other meetings besides those he had been asked about.

The witness was asked similar questions as to the levy of the 5-mill tax for 1933. He was asked to turn to the meeting of January 2, 1933, and state whether the minutes showed a city tax of 5 mills and he answered that the record did not show it. He was then asked, "What is the next time?" He answered February 6, 1933. "Q. Were there any taxes levied? A. I have glanced through but I have not read through them. Q. Look at all of them and see about the next date. A. There is none for February, then is March 3, 1933. Q. Look at the next. A. There was none in March. Q. The next? A. April 3, 1933, none made there, none in April, none in May, there was a called meeting in May and none made there. Next is June 9, none made there, another meeting in June, none made, there was no levy in June. July 3, 1933, no levy in July. August 7, none was made in August. None made in September. On the same page as the September meeting, it says no council meeting for October, November or December. Q. You looked over the record and consider it a permanent record, and there was no tax for the year 1933. A. That is correct."

The other witness, Gordon Jeffers, County Clerk, testified (quoting from appellees' brief): "What book is this you have? A. This is the tax book for 1931, the real estate tax book. Q. What page? A. Page 111. Q. Do you find the name of J. C. or Claude Mainard? A. Yes. Q. On what line? A. Line 2, page 111. Witness Jeffers further testified that the NW¼ of the NW¼ of section 35-10-27 was valued on the tax book at $1,000, that it had a 5-mill city tax charged against it for the year 1931. He further testified that the total tax, penalty and costs, including the 5-mill city tax, was $47.17 and that it sold to the State of Arkansas for that amount; that the costs charged against this piece of land was 75 cents; that the costs now amount to 55 cents but was unable to testify as to the costs for the year 1931. The court then asked the witness this question: Q. If 75 cents is right they had a different rule. A. Yes. Witness Jeffers further testi-

fied from the tax record book for the year 1933 that SW¼ of the NW¼ section 35-10-37 was valued on the tax book at $2,000; that the amount of taxes extended was $85.40. Further testifying from the record book of the lands sold for taxes for the year 1933 at page 19, line 29, that there was charged against this land a 5-mill city tax and that this 5-mill city tax was included in the $85.40 extension." He further testified that the penalty charged was $8.54, and the costs 20 cents, making a total of $94.16.

At the conclusion of this testimony of Mr. Russell and Mr. Jeffers, the court took the case from the jury and directed a verdict for appellees. We quote in part from the judgment: "After hearing the testimony and exhibits introduced on the part of the plaintiff, (appellant), the court finds said testimony that the property in question was sold for a greater amount of money than the amount of taxes due thereon and that the deeds from the State to the plaintiff are void and did not convey title to the plaintiff and that the plaintiff could not eject the defendants (appellees) and took that question from the jury."

The question whether the two tracts of land involved were sold for excessive taxes by reason of the 5-mill city tax, which appellees claim was unlawfully assessed against these two tracts of land, was one of fact, which the court should have submitted to the jury. While the evidence appears not to have been fully developed, we cannot say, as a matter of law, that there is no substantial evidence presented tending to support appellant's theory that the 5-mill city tax was properly extended and charged as a tax against these lands by the county clerk. The testimony of Russell and Jeffers, while in the circumstances here, we think not incompetent as contended by appellant, is of a negative character. The fact that the records of the city of Ozark failed to disclose a levy of the 5-mill tax by the city council is not conclusive that the city council did not in fact make the levy.

Section 9655 of Pope's Digest provides: "The council of any municipal corporation may, on or before the time fixed by law for levying county taxes, make out and

certify to the county clerk the rate of taxation levied by said municipal corporation on the real and personal property within such city or town. The amount so certified shall be placed upon the tax book by the county clerk of the county and collected in the same manner that state and county taxes are collected.''

In construing this section of the statute, in *Smith* v. *Ford,* 203 Ark. 265, 157 S. W. 2d 199, this court said: ''The only testimony introduced by appellants was the evidence of the recorder of Newport, who was the custodian of the records of said city. He testified that he had made a search of the records and was unable to find a resolution of the city council levying a 5-mill tax on the lands in the city for the year 1931. He produced and introduced as a part of the evidence the minutes of the proceedings of the city council for the year 1931 and testified that no mention of a 5-mill tax levy appeared in them.'' While it appears in the above case that the recorder there introduced in evidence the minutes of the city council, which was not done in the present case, we further said in that opinion: ''It is true that the minutes of the city council for the year 1931 do not show that a levy for 5 mills was made on the property in said city but this does not necessarily mean that the city council did not make the levy.''

Appellees next insist that the sales of the lands here to the state were void for excessive taxes and charges, that the total taxes extended against the first tract, *supra,* which sold for the 1931 taxes, on a valuation of $1,000, amounted to a total of $42.40, including a 5-mill city tax, that the penalty was $4.22, and the costs 75c, making a total of taxes, penalty and costs, $47.17. The 10 per cent. penalty of $4.22 was authorized by Act 156 of 1925, (Pope's Digest, § 13844).

The costs of 75c were not excessive, but were authorized by statute at the time this particular sale was made.

Clerk's costs as fixed by C. & M. Dig., § 4577, as amended by Act 189, Acts of 1929, § 3, pp. 984-5, Castle's

1931 Ann. Suppl. to Ark. Statutes, § 4577, are as follows: For furnishing copy of delinquent lands to printer, each tract—.10, for attending sale of delinquent lands and making record thereof, each tract—.10, printer's fees for advertising each tract as fixed by § 6806, C. & M. Dig., as amended by Act 92, Acts of 1929, § 2, p. 496, Castle's 1931 Ann. Suppl. Ark. Statutes, § 6806—.50, collector's fees for sale of each tract as fixed by § 13850, Pope's Digest—.10, total $0.80.

The other tract, as noted above, became delinquent for nonpayment of the 1933 taxes and sold at the 1934 tax sale. Under § 5662 of Pope's Digest, the clerk would be allowed to charge and collect as costs 10c on each tract for attending the sale and making a record thereof, and the collector's fee of 10c for each tract of land sold, as provided by § 13850 of Pope's Digest, making a total of 20c. This sale was made while §§ 5 and 6 of Act 250 of 1933 were in effect. These sections were declared constitutional by this court in *Matthews* v. *Byrd,* 187 Ark. 458, 60 S. W. 2d 909. (See, also, *Union Bank & Trust Company* v. *Horne,* 195 Ark. 481, 113 S. W. 2d 1091).

Just what taxes, penalty and costs should have been lawfully charged and collected against this tract on an admitted valuation of $2,000, we are unable to determine on account of the confused and uncertain state of the evidence. On this point, the county clerk, Mr. Jeffers, testified on direct examination: "Q. What book do you have there? A. The record of the lands sold for taxes —for 1933. Q. What is the valuation extended? A. $2,000. Road district 22 mills, school district 14 mills, state 18, and city 5 mills. Q. What is the total $85.40." That the penalty was $8.54, the costs 20c, making a total of $94.16. At another place in Mr. Jeffers' testimony given just before the above, on direct examination, he testified: "Q. You have before you what book? A. The tax book for 1933. Q. What is the valuation? A. $2,000. Q. What amount of taxes extended? A. $85.40. Q. Does it include a 5-mill city tax? A. It does not set it out here. It gives the mills for school—18, state 8.7, county

11, that is all." Whether there was an overcharge of 2c as appellees contend, we are unable to say.

(2)

Since the cause must be reversed, it becomes unnecessary to consider appellant's second contention.

(3)

We find no error in the court's refusal to transfer the cause to equity. The primary issue here was the title to the property in question. Appellant brought this suit in ejectment, no defenses were interposed by appellees that could not be determined in the law court. Appellees did not ask for cancellation of appellant's tax deeds, but asserted that they were void for lack of power in the state to sell. In *Brasher* v. *Taylor,* 109 Ark. 281, 159 S. W. 1120, this court said: "It is . . . well settled that the title to real property may be settled in an action of ejectment, and where the title is put in issue by the pleadings the verdict and judgment are final and conclusive as to the title."

The judgment is accordingly reversed, and the cause remanded for a new trial.