LOFTIN, SHERIFF AND COLLECTOR, VS. WATSON.

1. COUNTY WARRANTS: *What county tax not receivable for.*

County warrants, issued since the adoption of the Constitution of 1874, for liabilities incurred by the county subsequent to that date, are not receivable, either under the Constitution, or the statute, in payment of a tax levied to pay county indebtedness existing at the date of the adoption of. the Constitution.

2. LEGISLATION: *Amendment; Constitutional provision, etc.*

An amendment to a bill, which limits or extends its scope, but embraces no new matter not germain to its original purpose, is not within the provision of the Constitution prohibiting the amending or altering a bill, so as to change its original purpose.

Loftin, Sheriff and Collector, vs. Watson.

APPEAL from *Jackson* Circuit Court.

Hon. WILLIAM BYERS, Circuit Judge.

*Henderson* for appellant.

*Coody contra.*

HARRISON, J.:

This was an application to the court below by E. L. Watson, a tax-payer of Jackson County, for a writ of mandamus to compel John R. Loftin, the Sheriff and Collector of Taxes, to receive from him county warrants, issued since the adoption of the Constitution of 1874, in payment of the tax levied by the County Court, in 1876, to pay indebtedness existing at the time of the adoption of the Constitution.

The amount of his tax, to pay such indebtedness, he alleged in his petition, was $33.15, and that he had tendered the sum to the collector, in county warrants, issued since the adoption of the Constitution, and the same had been refused. The collector admitted the facts stated in the petition, but denied the right of the petitioner to pay the tax in such warrants.

The writ was granted, and the collector appealed.

The act of December 14th, 1875, entitled, "An act to prevent discrimination in county warrants or county scrip," is as follows :

"Be it enacted, etc. : That all county warrants and county scrip shall be receivable for any taxes for county purposes, except for interest on the public debt, and for sinking fund, and for all debts due the county by whose authority the same was issued; and all city warrants, scrip, acceptances, or money, shall be receivable for any city purposes, except for interest tax, and for all debts due the municipal corporation by whom the same were issued, without regard to the time or date of issuance of such warrants, scrip, acceptance or money, or the purpose for which

they were issued; and it is hereby made the duty, and authority is hereby conferred upon the County Court of the respective counties, or the Judge thereof, in vacation, to make all needful orders compelling collectors, both county and municipal, to comply with the provisions and intent of this act. Provided, that nothing in this act shall authorize the collector to receive scrip issued since the adoption of the Constitution, in payment of the tax levied to pay the indebtedness existing before the adoption of the Constitution."

The Constitution, art. xvi, sec. 9, fixes the rate of county taxation at one-half of 1 per cent., for all purposes, except to pay indebtedness existing at the time of its ratification, for which the levy of an additional one-half of 1 per cent. may be made; and sec. 11, of the same article, forbids any money arising from a tax levied for one purpose to be used for any other purpose.

It is thus seen that the collector was inhibited from receiving the warrants, by both the Constitution and the act of December 14th, 1875. Had he received them, the levy would have failed of its purpose, for the new warrants would have discharged no part of the old indebtedness, and the tax would have been perverted, in violation of the Constitution, to a purpose for which it was not levied, and that also, instead of one-half of 1 per cent. only, that might be levied for ordinary purposes, 1 per cent. would have been collected.

Another thing may be noticed—the old warrants, after they have been presented for payment to the Treasurer, draw 6 per per cent. interest; the new draw none. Sec. 1, of the article of the Constitution before referred to, denying to counties the power to issue interest bearing evidences of indebtedness.

If the act of December 14th, 1875, had not been passed, no question could exist as to the right to pay the tax in old warrants, for the law under which they were issued expressly pro-

vided that they should be received for all taxes and dues to the county, and they go directly to the extinguishment of the indebtedness.

We are to presume the warrants tendered the collector were upon allowances for liabilities of the county, incurred since the adoption of the Constitution.

The judgment of the court below is reversed, and the case remanded to it, with instructions to overrule the motion for the writ of mandamus.

---

ENGLISH, CH. J.:

When the opinion of the court in the above case was announced, by Mr. Justice Harrison, it was held up, on the suggestion of a member of the bar, that in another case pending in the court, (*Lindsey* v. *Rottaken,*) it was insisted that the act 14th of December, 1875, was passed in violation of a provision of the Constitution, and was void. We have looked into the question, and are now prepared to announce the conclusions which we have reached, after hearing the oral argument in the case referred to.

Sec. 21, art. 5, of the Constitution, provides that:

"No law shall be passed except by bill, and no bill shall be so altered or amended on its passage, through either house, so as to change its original purpose."

We have been furnished, from the office of Secretary of State, with an authenticated copy of the original bill, which, when amended, as shown by the journals of the two houses, and passed, became the act in question.

The original bill, when introduced in the House of Representatives, November 9th, 1875, read as follows:

"A bill for an act to prevent discrimination in county warrants or county scrip.

" Be it enacted by the General Assembly of the State of Arkansas :

" Sec. 1.   That all county warrants, or county scrip, shall be receivable for any taxes for county purposes, and for all debts due the county by whose authority the same were issued, without regard to the time or date of the issuance of such warrants, or for the purpose for which they were issued ; and it is hereby made the duty of, and authority is hereby conferred upon the County Court of the respective counties, or the Judges thereof, in vacation, to make all needful orders, compelling collectors to comply with the provisions and intent of this act.

" Sec. 2.   That all laws and parts of laws in conflict herewith be, and the same are hereby repealed; and this act be in force, and take effect from and after its passage."

" HILL, *of  Calhoun.*"

It apppears from the House Journal that the bill was read a first and second time, and referred to the Committee on the Judiciary.

On the 9th of November the committee reported the bill back to the House, recommending that sec. 1 of the bill be so amended as to read as follows :

" That all county warrants and county scrip shall be receivable for any taxes for county purposes, except for interest on the public debt, and for sinking fund, and for all debts due the county by whose authority the same were issued ; and all city warrants, scrip, acceptances or money shall be receivable for any taxes for city purposes, except for interest tax, and for all debts due the municipal corporation by which the same were issued, without regard to the time or date of issuance of such warrant, scrip, acceptance, certificate or money, or the purpose for which they were issued, and it is hereby made the duty, and authority is

hereby conferred upon the County Court of the respective counties, or the Judges thereof, in vacation, to make all legal orders compelling collectors, both county and municipal, to comply with the provisions and intent of this act."

And the committee recommended that the bill so amended be passed.

The report and the amendments recommended by the committee were adopted, and the bill ordered engrossed; and on the 1st of December the bill, having been engrossed, was read a third time, and passed.

The Senate Journal shows that the bill, as sent from the House, was read the first time on the 2d of December, the rules suspended, and read the second time, and referred to the Committee on Finance.

On the 7th of December the committee reported, recommending that the following proviso be added to sec. 1:

" Provided, that nothing in this act shall authorize the collectors to receive scrip issued since the adoption of the Constitution in payment of the tax levied to pay the indebtedness existing before the adoption of the Constitution."

The amendment proposed by the committee was read the first time, the rules suspended and read a second time, and, on the 8th of December, the bill, as so amended, was read the third time, and passed.

The bill was returned to the House, the amendment of the Senate concurred in, read a third time, on the 9th of December, and passed.

The objection to the validity of the act is, that the bill was so amended by the two houses as to change its original purpose.

The purpose of the bill was to make county warrants, etc., receivable in payment of county taxes and debts, without regard to the dates of such warrants, or the purposes for which they

were issued. The original purpose of the bill was preserved in the act, but the amendments made by the two houses limited the scope of the bill, by exceptions, and extended it so as to embrace city warrants, etc., with like exceptions.

Thus the original bill declared that county warrants should be receivable in payment of all county taxes, etc., without regard to date or purpose of issuance, and the amendment of the House limited the scope of the bill by excepting taxes levied for interest on the public debt and sinking fund.

So, the original bill did not embrace cities, but the amendment of the House extended the scope or purpose of the bill so as to include warrants, etc., issued by them, with the limitation that such warrants, etc., should not be receivable in payment of interest tax, etc.

The Senate amendment made a further limitation of the scope of the bill as passed by the House, by a proviso that scrip issued since the adoption of the Constitution should not be received in payment of taxes levied to pay indebtedness existing before its adoption.

The bill, thus limited and extended by the amendments of the two houses, in its scope or purpose, but embracing no new matter not germain to its original purpose, became a law.

No bill shall be so altered or amended, etc., as to change its original purpose.

Purpose, (from the Latin, *propositum,*) that which a person sets before himself as an object to be reached or accomplished; the end or aim to which the view is directed in any plan, manner, or execution; end, or, the view itself; design; intention—*Webster*.

Though the provision of the Constitution be mandatory, it should not receive so rigid or narrow a construction as to embarrass or hamper the two houses in amending and perfecting

their bills, and drive them to accomplish, by a number of bills, that which might well be accomplished by amending a bill, without adding foreign or incongruous matters, or perverting its original purpose. Cooley's Con. Lim., p. 142, etc.

To amend a bill for an act regulating attachments, for example, so as to change it into a road, revenue, game, school or estray law, would be palpably in . violation of the Constitution. But a bill for an act to regulate attachments in Circuit Courts, might, we think, be so amended as to embrace attachments before justices of the peace, without any violation of the Constitution, the subject of the amendment being germain, and not incongruous to the purpose of the bill.

Sec. 34 of the same article of the Constitution provides that: "No new bill shall be introduced into either house during the last three days of the session."

Now, but for sec. 21, the force and intention of this section might be avoided during the last three days of the session, by taking up bills previously introduced for purposes indicated in their titles, and expressed in their bodies, and converting them, by amendment, into bills for totally different puuposes, or engrafting upon them provisions foreign to their original purposes.

There was a provision in the Constitution of 1868, that no act should embrace more than one subject, which should be expressed in its title. Sec. 22, art. v. But it was regarded as no violation of this clause of the Constitution to embrace, in a revenue act, provisions for levying and collecting State, county, township and city taxes, and such was the habit of the Legislature.

Under a similar provision of the Constitution of Minnesota, in *Board of Supervisors of Ramsey County* v. *Heenan*, 2 Minn., 338; held that an "act to provide for township organizations,"

was not void for containing provisions relating to county organizations. That, in a technical sense, the act did embrace more than one subject, and that but one was expressed in the title, but that the subjects were intimately connected and associated, and the embracing of them in the same act, though forbidden by the letter, was not by the spirit and intention of the Constitution.

So, in *Tuttle* v. *Strout*, 7 Minn., 468; held, that "An act for homestead exemption," was not void because it treated also of exemptions of personal property. That exemptions for sale on execution was the subject of legislation, and with a provision for exempting the homestead might be embraced provisions for exempting personal property, without violating the spirit of the Constitution.

See, also, *Palmore* v. *State*, 29 Ark., 252; *Fletcher* v. *Oliver*, 25 Ib., 298.

Counties and incorporated cities and towns are but larger and smaller divisions of the State, for governmental and police purposes, and we can see no violation of the spirit of the clause of the Constitution in question, giving it a reasonable interpretation, in holding that a bill having for its purpose an act requiring county scrip to be received in payment of county taxes, etc., might not be so amended as to embrace city scrip, etc., the subjects being kindred, and usually associated in our revenue acts.

If there be a mere doubt about the constitutionality of an act, the habit of the courts is to solve the doubt in favor of the validity of the act, and thereby concur with the judgment of the Legislature.