WASSON v. PLANTERS' BANK & TRUST COMPANY.

4-3358

Opinion delivered December 4, 1933.

W. R. *Roddy*, for appellant.

M. B. *Norfleet* and *Trieber & Lasley,* for appellee.

BUTLER, J. On August 25, 1933, act No. 15 of the Extraordinary Session of the Forty-Ninth General Assembly of the State of Arkansas was approved. The purposes of this act are accurately stated in its title, which is as follows: "An act to qualify State banks for deposit insurance under congressional statute, and to recognize the rights of, and permit, the Bank Commissioner to co-operate and deal with federal deposit insurance corporation in respect to State insured banks and State member banks of the Federal Reserve System, as contemplated by said congressional statute; to authorize and validate the issuance by State banks in certain cases of common and/or one or more classes of preferred nonassessable and single-liability capital stock; and to reaffirm the legal and equitable remedies of creditors and

other interested parties against banks under management of the Bank Commissioner.''

Section 1 of the act deals with the first purpose stated in the title of the act and gives to banks and trust companies and the Bank Commissioner the authority to effectuate that purpose.

Section 2 deals with the nature of the capital stock of banks and provides for the issuance by banks or trust companies, organized after the effective date of the act, of nonassessable and single liability preferred or common stock, and provides how and in what event and under what conditions banks and trust companies already existing, whether going concerns or operating on a restricted basis, or undergoing liquidation, or under the management of the Bank Commissioner, may convert stock held in such institutions into nonassessable and single liability stock either common or preferred.

Section 2-A relates to the status of the liability existing against owners of stock in banks existing at the time of the passage of the act.

Section 3 provides for the preservation of all remedies at law or in equity of creditors and other parties in interest against banks, trust companies, or building and loan associations, taken in charge for purposes of management by the Bank Commissioner, except in certain named particulars; and provides that the statute of limitations applicable to any claims against such institutions shall not be suspended or impaired during the management by the Bank Commissioner.

Section 3-A provides for the issuance by the Bank Commissioner of a certificate evidencing the claim of a depositor against any bank or trust company taken over for purpose of management where the right of withdrawal of the deposit is restricted in any way.

Section 4 provides for a repeal of all laws in conflict with the provisions of the act, and that, if any of its provisions should be held invalid for any reason, the remainder of the act should not be affected thereby.

Section 5 is the emergency clause setting forth the nature of the emergency existing and the necessity for the immediate operation of the act.

Section 2, among other things, provides that where the original charter did not provide for the issuance of preferred stock, the bank or trust company seeking to issue the same might so provide by an amendment to the charter, which action must be approved by the Bank Commissioner.

The appellee bank is seeking to partake of the benefits prescribed by the act of Congress, *supra,* and to accomplish that purpose its stockholders filed with the Bank·Commissioner a proposed amendment to the charter of the bank by which authority was given the bank to convert its stock into nonassessable and single liability stock, a certain amount of which was to be preferred stock as provided for by act No. 15. The Bank Commissioner took the position that there was no legal authority for an amendment of the character proposed, and refused to entertain the application or to make any formal ruling on the merits thereof. Thereupon a petition for mandamus was filed in the second division of the Pulaski Circuit Court to compel the Bank Commissioner to exercise his discretion by passing upon the merits of the proposed amendment bearing upon the welfare of the bank, its stockholders and creditors, and to make a ruling either allowing or rejecting the proposed amendment. From the judgment of the circuit court granting the prayer of the petition, this appeal is prosecuted.

The validity of the act is attacked on seven separate grounds. The first point made is that it authorized the conversion of outstanding stock subject to an assessment to the amount of 100 per cent. of its face value into nonassessable and single liability stock whereby the rights of existing creditors are impaired and results in the violation of the obligation of the contract, and depriving them of their property without due process of law within the meaning of the National and State Constitutions prohibiting legislation of that character. It is contended that an analysis of § 2 shows that it specifically authorizes the conversion of outstanding assessable stock into nonassessable stock and contains no provision safeguarding the rights of creditors who hold obligations of the bank

antedating the passage of the act, and thus extinguishes the stockholders' liability to creditors of the bank then existing, and that there is no language in the act subsequent to § 2 which, properly construed, protects the creditors in their rights against the stockholders, existing prior to the enactment of act No. 15.

Section 2 consists of one long and involved paragraph, but there is no unsurmountable difficulty in arriving at its meaning. It simply provides that any bank or trust company then or thereafter organized, where withdrawal of its demand deposits shall have been restricted or where they may have been taken in charge by the Bank Commissioner, either for liquidation or management under existing laws, and if the corporation shall be reorganized by the removal of all restrictions on the withdrawal of its deposits except such as are expressly agreed to by the depositors, or where the Bank Commissioner's charge for purposes of liquidation or management shall have been terminated, or where as a successor to it another bank or trust company shall be organized assuming in whole or in part its deposit liabilities, then, in either event, where the action is authorized in the original articles of agreement or so authorized by amendment to the articles (the amendment to be submitted to and approved by the Bank Commissioner) all or part of the capital stock outstanding may be converted and the issuance of other shares may be authorized, which converted stock and such as is newly issued shall not "subject the owners thereof to any liability either to restore the capital or said respective bank or trust company, or, in addition to the amounts invested therein, for any of its debts, contracts or engagements." The meaning of the language quoted is obscure, and if, as contended by the appellant, it relieves the stock of the banks existing prior to the passage of the act from assessment for the benefit of then existing creditors, it might be deemed as an impairment of the obligation of the contract existing between the bank and its creditor, and, for that reason, void on constitutional grounds.

It is well settled that a statute ought to be construed so that its validity be upheld, if any reasonable interpretation of its language justifies that action, and, where the language is of doubtful import, the entire act should be looked to. Under these settled canons of construction, when we examine § 2-A in connection with the part of the act challenged and quoted, *supra,* it is apparent that the Legislature was dealing with the stockholders' liability with respect to debts of the bank contracted after the passage of the act and was not intended to, and did not, relieve the owners of stock in any existing banking institution from liability with relation to debts which the bank owed at that time, either to depositors or any other class of creditors. We think there can be no mistake as to what the Legislature intended, for by § 2-A it provided that "when bank stock is converted as provided for in § 2, nothing in this act shall be construed as to relieve in any manner the double liability existing against owners of stock in old banks and/or trust companies in which the stock is being converted."

The appellee correctly interprets the statute to mean, when §§ 2 and 2-A are read together, that holders of converted stock are not subject to double liability in respect thereof, but that those who were holders of stock subject to a double liability are not relieved therefrom, and continue subject to assessment to 100 per cent. of the par value of the stock outstanding on the date of the act for the satisfaction of the debts of the bank or trust company contracted prior to the conversion, even though such stock may have been converted into nonassessable stock in a new organization. The liability on the stock of a bank or trust company, existing at the time of the passage of the act, would remain and continue, even though the liability had not been fixed by the levy of any assessment against the stock. Therefore, since the act of conversion of stock in an existing bank into stock of a new organization does not in any degree affect any liability for debts then existing, it could not, and does not, deprive any such creditor of any rights, and does not violate the obligation of a contract or deprive the creditor of his property without due process of law.

The next point made is that the act violates the same constitutional provisions because it may lessen the value of the shares of a common stockholder without his consent by reason of the issuance of preferred stock authorized by the act. This is the only objection to the validity of the act about which, in our opinion, there can be any question. It is contended that, where a corporation is created with common stock only, an implied contract exists between the corporators that the net profits of the corporation will be divided among the holders of such common stock in proportion to their ownership of shares; and, if thereafter preferred stock is issued, the result would be that the owners of common stock would not participate in the profits as intended, but their rights would be deferred to the preferred stock, and their profits diminished by the amount of dividends paid the same; and that therefore, unless the charter itself reserved the power of issuing preferred stock, the unanimous consent of the holders of common stock is necessary to validate such issue, and that, as the charter of the appellee bank did not reserve the right to issue preferred stock, the act is invalid because it permits the same to be done by a mere majority of the stockholders.

To sustain this contention, the appellant cites the case of *Einstein* v. *Raritan Woolen Mills,* a case from the New Jersey equity courts, reported in 74 N. J. Eq. 624, 70 Atl. 295. In that case there were two questions, one as to the power of the corporation, without the assent of all its shareholders, to increase the amount of its capital stock, and the other, as to the right of the corporation to issue preferred stock and compel its substitution for present outstanding common stock without the consent of all the shareholders. In holding that the corporation could do neither, because it would be an impairment of the obligation of contract, the court cited the case of *Chicago City Ry.* v. *Allerton,* 18 Wall. (U. S.) 233, as authority for its conclusion. That case is not authority for the point decided in *Einstein* v. *Raritan, etc., supra,* for there the only question was as to the power of the board of directors, acting alone to increase the capital

stock without the matter being submitted to, and approved by, the stockholders, and the only authority claimed was the provision in the charter "that the corporate powers of said corporation shall be vested in, and exercised by, a board of directors," etc. The court held that this was no authority for the act complained of, since that provision in the charter authorized the performance merely of the ordinary business transactions of the corporation and did not extend to a reconstruction of the body itself, or to an enlargement of its capital stock. The doctrine of the case of *Einstein* v. *Raritan, supra,* was reaffirmed in the case of *Allen* v. *Francisco Sugar Co.,* 92 N. J. Eq. 391, 110 Atl. 37.

It appears that at the time of the decision in the Einstein case there was no reservation in the Constitution or statutes of New Jersey for an alteration in the charter of the corporation, and that question was not passed upon. There are other decisions which apparently deny the right of the State to alter the contract of the stockholders as between themselves by statute passed after the formation of the corporation, but, in those States in which the power is reserved to alter or amend charters of corporations, it seems that such legislation is upheld and, in general, that the charter may be altered so as to impose greater burdens on the stockholders than were imposed at the time the charter was granted or makes possible a diminution in the value of their shares, where such alteration does not involve a confiscation of the rights of the individuals, deprive them of their property without due process of law, or violate the elementary principles of natural justice. In re *College Hill Land Ass'n, etc.,* 157 Cal. 596, 108 Pac. 681; *Peters* v. *U. S. Mortgage Co.,* 13 Del. Chy. 11, 114 Atl. 598; *Somerville* v. *St. L. Mining, etc., Co.,* 46 Mont. 268, 127 Pac. 464, L. R. A. 1915B 811; *Hinckley* v. *Schwarzschild, etc.,* 95 N. Y. Supp. 357; *Winfree* v. *Riverside Cotton Mill,* 113 Va. 717, 75 S. E. 309.

In this State, the right to alter or repeal laws under which corporations may have been formed and to alter, revoke or annul any charter of corporations by legislative

act is expressly reserved by § 6, article 12, of the Constitution. Previous to January 1, 1914, stock in banking corporations was nonassessable for debts due by the corporation, but the General Assembly of 1913 passed an act, by the last section of which double liability was imposed on stock for all the debts and engagements of the bank, and which became effective January 1, 1914. This act was attacked in the case of *Davis* v. *Moore,* 130 Ark. 128, 197 S. W. 295, on constitutional grounds, and the same was upheld by this court on the power of the Legislature to make any alteration in the articles of incorporation under the reserve power retained in the Constitution, so that no injustice shall be done the incorporators. The court said: "We do not think this statute falls within the terms of the limitation upon the power of the Legislature with respect to confining amendments to those which do no injustice to the corporators." The constitutionality of that act was also upheld by the Court of Appeals of New York, 134 N. E. 596, on appeal from the appellate division of the Supreme Court in the case of *Maxwell, etc.,* v. *Thompson,* 186 N. Y. Supp. 208. In the opinion rendered in the last-named court, § 6, art. 12, of our Constitution was quoted, the statute reviewed, and the conclusion reached that it was constitutional, both under the laws of the State of Arkansas on the authority of *Davis* v. *Moore, supra,* and of the Constitution and statutes of the State of New York.

In the case of *Bank of Blytheville* v. *State,* 148 Ark. 504, 230 S. W. 550, the court had under consideration the statute (§§ 2832-2835 of Crawford & Moses' Digest) making stockholders of banks liable for public funds deposited therein. Its constitutionality was attacked on the contention, among others, that it impaired existing obligations of contract in violation of art. 1, § 10, of the Federal Constitution, and also that it came within the limitation of the powers of the Legislature contained in § 6, art. 12, of our Constitution. The court, in overruling both contentions, said: "Every objection urged by appellants against the constitutionality of the acts finds an answer in the fact that a corporation accepts its charter powers subject to the reserved right in the State to alter or re-

voke the charter whenever, in the opinion of the General Assembly, such revocation or alteration is for the protection of the citizens of the State, if done in such a manner that no injustice may be done to the corporators. Before an act revoking or changing the charter of a corporation can be declared unconstitutional, it must appear that the effect of the act is confiscatory of the stock or property of the corporation.''

The right to alter the charter, reserved by the State, necessarily vested the Legislature with power to provide for the issuance of preferred stock, and, since it does not appear that any elementary principle of natural justice would be violated, or that the issuance of preferred stock in the manner provided by the act would work any confiscation of the stockholders' property in their stock, it is our opinion that no constitutional prohibition is violated, because the rights of all parties, it must be presumed, will be protected by the Bank Commissioner when he passes on the merits of the application for amendment. It may also be said that, since an act of the General Assembly passed at its 1905 session, every corporation organized under the laws of this State by virtue of said act has had the power to issue preferred stock, either where the right was expressed by certificate of incorporation or in an amendment thereof. The provision of the act is § 1703 of Crawford & Moses' Digest, which is that ''Every corporation organized under the laws of the State of Arkansas shall have power to issue preferred stock with such preferences and voting powers and restrictions or qualifications therein as shall be stated and expressed in certificate of incorporation, or in any certificate of amendment thereof.''

The third point raised by the appellant is that the phraseology of the act does not authorize the issuance of nonassessable preferred stock, the argument being that the general provision contained in the last sentence of § 2, authorizing any bank or trust company organized after the passage of the act to issue common or preferred stock, relates to a particular provision providing for the reorganization of restricted banks, those in the hands of the Commissioner for liquidation or management, and

that, since the appellees were not proceeding under the prior particular provisions, they were not entitled to any relief. We see no merit in this contention.

The fourth ground of objection is that, because of the ambiguity of the language of §§ 2 and 2-A, there is no authority to issue nonassessable stock. As already noted, we find no ambiguity when the two sections are read together, and we regard the language as sufficiently definite to accomplish the purpose designed.

We find no merit in the 5th objection, that the addition of §§ 2-A and 3-A to the original bill by way of amendment changed the purpose of the measure, and therefore the legislation is void under § 21 of art. 5 of our Constitution. Section 2-A, as we have seen, does not change the original purpose of the measure, but clarifies and makes certain the provisions of § 2 with respect to the continuing liability of existing stock. Section 3-A merely provides for a certificate of indebtedness to be issued to the owners of frozen deposits. One of the purposes of the act was to preserve the rights of such depositors as then existed, and § 3-A merely provided for the evidence of the amount of the existing claim. But, if it should be obnoxious as not within the purpose of the act as originally drawn, it could be eliminated without impairing the remainder of the act, and giving effect to the intention of the law-making body as expressed in § 4 of its act, *supra;* the remainder of the act, if otherwise unobjectionable, will be sustained.

It is contended in the sixth place that the act violates § 23 of art. 5 of our Constitution, which restrains the Legislature from amending or extending provisions of a statute by reference to its title. The particular complaint made is that, under the act, the issuance of nonassessable stock will be "executed, submitted to, and approved by, the Bank Commissioner, and filed with the county clerk, all in a manner and form as now provided by law." The answer to this is that the statute is original in form, and by its own language grants powers, confers rights and creates burdens or obligations, and the reference to existing laws is for the purpose of pointing out the procedure in executing the power, en-

forcing the right, or discharging the duty. *Farris* v. *Wright*, 158 Ark. 519, 250 S. W. 889.

In the last place, it is insisted that the act was not enacted through proper legislative proceedings. We deem it unimportant to set out the errors alleged, since we think a fair construction of the record of the House and Senate do not in any particular sustain the complaint made, or render it uncertain as to the identity of the legislation considered in the bill, which, as amended, finally and properly became the act now under consideration.

It follows, from the views expressed, that the action of the circuit court in awarding the writ prayed was correct, and its judgment is therefore affirmed.