HENRY *v.* TARPLEY.

5-1935                                            324 S. W. 2d 503

Opinion delivered June 1, 1959.

*Frank Holt, Prosecuting Attorney, John Jernigan, Chief Deputy Prosecuting Attorney,* for appellant.

*Gerald T. Ridgeway,* for appellee.

*Catlett & Henderson, Amici Curiae* brief; *MeHaffy, Smith & Williams, Amici Curiae* brief.

J. SEABORN HOLT, Associate Justice. This appeal involves the constitutionality of Act 107 of the 1959 Legislature. On a hearing, the trial court held the Act unconstitutional on two grounds: (1) that it violates Amendment No. 40 to the Constitution of the State of Arkansas and, (2) that it also violates Amendment No. 14 for the reason that it was special and local in its effect.

Since we have concluded that the Act clearly, we think, violates Amendment 40 on two grounds, which we shall point out it becomes unnecessary to consider whether it violates Amendment 14.

A brief summary of Act 107 may be stated as follows:

(1) Upon the petition of not less than 10% of the qualified electors of each of the school districts within any county that may now or hereafter have a population of 100,000 or more, the County Board of Election Commissioners of the county shall call a special election on the question of whether the county shall be a County Equalizing School District.

(2) If a majority of the "qualified electors in the county voting on the issue" shall vote for the County Equalizing School District, the same shall be established and if a majority vote against the County Equalizing School District, the same shall not be established, and another election shall not be held in the same county for a period of two years.

(3) If the vote is for County Equalizing School District, the County Board of Election Commissioners certify the same to the County Clerk and the district is named for the county voting for the same.

(4) The County Equalizing School District shall be composed of the territory of the school districts of

the county voting the same but ''The establishment of a County Equalizing School District shall, in no way, alter, change, or affect any of the powers, duties or existence of any of the school districts of the county''.

(5) The electors of the County Equalizing School District (thus the electors of the entire county) have the power at the annual school election to vote for the allocation of a portion of the total tax proposed by the school board of each school district and such revenue as may accrue from the annual tax allocated to the county Equalizing School District shall be distributed to the respective school districts of the county to be used for equalizing educational purposes.

The County Board of Education serves as the board of the County Equalizing School District and the County Board of Education ''shall provide for the placing on the ballot'' in each school district the question of the voting for the allocation of nine mills at the first annual election after the establishment of such Equalizing District, and thereafter eighteen mills. ''If a majority of the qualified electors in the County Equalizing School District voting on the issue'' votes for the allocation, the appropriate county officials levy, collect and distribute the revenues from the tax to the Equalizing District to be used for the purposes of the Act. If a majority votes against the allocation, the millage shall be levied, collected and credited to the respective school districts by the appropriate county officials. The Act states its purpose to be that the school boards of the respective school districts shall propose the total millage levy for vote in each school district of the county.

(6) The County Board of Education distributes moneys derived by the Equalizing District as follows:

A. To each district a proportional part of the total funds as the average daily attendance of pupils in said district for the previous year bears to all pupils in average daily attendance for the previous year in all school districts of the county. Average daily attendance, in the case of a school closed by Governor's Proclamation of

Act 4 of the Second Extraordinary Session of 1958, is defined to be that of the year immediately preceding such closing and shall so continue until one full year after the school has been reopened.

B. The funds are to be distributed and credited by the County Treasurer upon order of the County Board of Education, to the school districts as now provided by law for distribution of funds derived from school millage levies. Funds so received may be used for maintenance and operation, erection and equipment of buildings and retirement of existing indebtedness.

(7) Section 7 of the Act repeats the intent that nothing shall amend, alter, diminish or change any of the existing powers and duties of school districts of the state.

(8) The Act contains a separability clause, a repealing clause, and an emergency clause.

Amendment 40 provides: ''Poll tax—School district tax—Budget—Approval of tax rate by electors.—The General Assembly shall provide for the support of common schools by general law, including an annual per capita tax of one dollar, to be assessed on every male inhabitant of this State over the age of twenty-one years; and school districts are hereby authorized to levy by a vote of the qualified electors respectively thereof an annual tax for the maintenance of schools, the erection and equipment of school buildings and the retirement of existing indebtedness, the amount of such tax to be determined in the following manner: The Board of Directors of each school district shall prepare, approve and make public not less than sixty (60) days in advance of the annual school election a proposed budget of expenditures deemed necessary to provide for the foregoing purposes, together with a rate of tax levy sufficient to provide the funds therefor, including the rate under any continuing levy for the retirement of indebtedness. If a majority of the qualified voters in said school district voting in the annual school election shall approve the rate of tax so proposed by the Board of Directors, then the tax at the rate so approved shall be collected as pro-

vided by law. In the event a majority of said qualified electors voting in said annual school election shall disapprove the proposed rate of tax, then the tax shall be collected at the rate approved in the last preceding annual school election. Provided, that no such tax shall be appropriated for any other purpose nor to any other district than that for which it is levied."

Sections One (1) and Two (2) of Act 107 make provisions for calling special elections for determining fiscal affairs of a school district which we have heretofore held to be in violation of the provisions of Amendment 40 which does not permit, or recognize, special elections, but only annual school elections for such purpose. In 214 Ark. 771, 218 S. W. 2d 359, *Adams* v. *DeWitt Special School District No. 1,* in considering Amendment 40, we held that "Special Elections are not recognized by the Amendment," (headnote 3) and in the opinion we said: "The Amendment [40] is comprehensive in that it removes all prior financial restrictions upon the electorate. Buildings, equipment, existing indebtedness, maintenance, all may be cared for in the Board's recommendations, and finality needs only the approval of a majority of those voting. The entire plan revolves around the annual election, mentioned four times."

In *Sims* v. *Hazen School District No. 2,* 215 Ark. 536, 221 S. W. 2d 401, where there was involved the question, whether a school district could impose a tax to support a bond issue at a special election held for that purpose, we there said: "We hold that it cannot for the reason that Amendment No. 40 of our Constitution, adopted November 2, 1948, prohibits the imposition of such a tax unless it has been approved by a majority vote of the qualified electors of such School District at an annual school election, and not at a special election, as was attempted here.

"The General Assembly could not by any provision of Act 161, *supra,* do anything forbidden by the Constitution. We said in *Hart* v. *Wimberly,* 173 Ark. 1083, 296 S. W. 39: 'The Act . . . could not have the effect of amending the Constitution, as would be the result if the contention of counsel be correct. The Legislature can-

not cure a proceeding made void by the Constitution, and no act that it passes can breathe vitality into a thing that is dead. The Legislature cannot do indirectly a thing directly prohibited by the Constitution.' '' We hold, therefore, that the Act is void for this reason.

We hold also that the Act is clearly void and unconstitutional for still another reason: It will be observed that Section Five (5) of the Act attempts to place a limit on the number of mills that the electors in a school district may vote upon themselves for school purposes by providing that, ''The number of mills to be allocated to the County Equalizing School District at the first annual school election after the establishment of such District shall be nine (9) mills, and thereafter the number of mills to be allocated to the County Equalizing School District shall be eighteen (18) mills.''

This attempted limitation is right in the teeth of Amendment 40 which places no limitation whatever on the number of mills that any school district may vote at any annual school election. Amendment 40 specifically places the amount needed to operate a school district in the hands of the voters of such district and removes all financial restrictions as to their powers in determining these amounts deemed necessary by the Board of Directors of the District for maintenance of schools, the erection and equipment of school buildings and the retirement of school indebtedness, while Act 107 provides that the millage cannot be less than nine (9) mills in the first school election and eighteen (18) mills thereafter, whether those amounts are needed or not.

Accordingly, the decree is affirmed.

GEORGE ROSE SMITH, McFADDIN and ROBINSON, JJ., concur.

JOHNSON, J., dissents.

GEORGE ROSE SMITH, Associate Justice, concurring. The only constitutional point I find it necessary to consider is the clear violation of the proviso in Amendment 40, which directs that no school tax ''be appropriated for

any other purpose nor to any other district than that for which it is levied.''

The equalizing school district created by Act 107 is not really a school district at all; calling it a school district does not make it one. It has no schools, no teachers, no pupils. It is simply a bookkeeping device by which tax money is to be taken from one or more of the true school districts in the county and given to one or more of the other districts. It seems so plain to me that the constitution cannot be circumvented in this manner that I see no need to express an opinion upon the various other issues that have been presented.

McFADDIN and ROBINSON, JJ., join in this opinion.

JIM JOHNSON, Associate Justice, dissenting. In respectfully dissenting to the majority view, I am convinced that Act 107 of 1959 does not violate Amendment No. 40 to the Constitution of the State of Arkansas.

In the past year it has been necessary for high schools in Pulaski County outside of the Little Rock School District to enroll students whose residences are within the Little Rock District due to that district's high schools being closed. This influx of additional students has caused these schools to suffer unreasonable financial hardships. Act 107 provides an ingenious method whereby the financial difficulties of these schools may be relieved.

Act 107 cannot be viewed as a temporary measure simply because the high schools in Little Rock may be opened in the future. There will always be those in the Little Rock District who love their children enough to insist that they attend segregated schools.

It cannot be argued that the legislature does not have the constitutional authority to provide for the creation of school districts. There is no constitutional provision setting out the kind or number of school districts the legislature may cause to be created. In passing Act 107 of 1959 the legislature chose to create a ''County Equal-

izing School District'' to be composed of the existing school districts in the county. In the absence of a constitutional prohibition against the creation of such a district, how can it be said that they did not have the authority to do so.

The majority contends that the creation and operation of such a district violates Amendment No. 40. Let us examine this constitutional provision. Amendment No. 40 simply authorizes school districts to levy an annual tax (a) for the maintenance of schools, (b) for the erection and equipment of buildings, and (c) for the retirement of existing indebtedness, specifies that no tax levied, assessed and collected for the benefit of a school district shall be appropriated for any other purpose or to any other district than that for which it is levied. A careful review of the record reveals that Act 107 of 1959 does not appropriate any tax levied and collected for the benefit of one school district to another. It clearly provides that the electors of the County Equalizing School District must vote upon the millage allocation. The end result is the levying and collecting of taxes within the County Equalizing School District for use within the County Equalizing School District. Such procedure is expressly authorized by Amendment 40 wherein it is stated: ''School districts are hereby authorized to levy by vote of the qualified electors respectively thereof an annual tax . . .'' The conclusion is inescapable that Act 107 of 1959 is valid. It follows and implements the express purposes of Amendment 40 and should therefore be upheld.

Further, the Act does not offend Amendment 40 by authorizing a special election to determine whether a County Equalizing School District should be established. The only special election which is violative of that Amendment is one called to impose a tax to support a bond issue. *Sims* v. *Hazen School District 2*, 215 Ark. 536, 221 S. W. 2d 401.

In *Bush* v. *Martineau*, 174 Ark. 214, 295 S. W. 9. this Court said:

"Before proceeding to a discussion of the issues raised by this appeal, we deem it proper to premise our remarks by two fundamental rules of construction announced and adhered to throughout the history of this Court. First, that the Constitution of this State is not a grant of enumerated powers to the Legislature, not an enabling, but a restraining act (*Straub* v. *Gordon,* 27 Ark. 629), and that the Legislature may rightfully exercise its powers subject only to the limitations and restrictions of the Constitution of the United States and of the State of Arkansas. *St. L. I. M. & S. Ry. Co.* v. *State,* 99 Ark. 1, 136 S. W. 938; *Vance* v. *Austell,* 45 Ark. 400; *Carson* v. *St. Francis Levee Dist.,* 59 Ark. 513, 27 S. W. 590; *Butler* v. *Board, etc.,* 99 Ark. 100, 137 S. W. 251. In other words, as was said in *McClure* v. *Topf & Wright,* 112 Ark. 342, 166 S. W. 174: 'It is not to be doubted that the Legislature has the power to make the written laws of the State, unless it is expressly, or by necessary implication, prohibited from so doing by the Constitution, and the act assailed must be plainly at variance with the Constitution before the court will so declare it.' Second, that an act of the Legislature is presumed to be constitutional, and will not be held by the courts to be unconstitutional unless there is a clear incompatibility between the act and the Constitution; and further, that all doubt on the question must be resolved in favor of the act."

Seeing no reason to deviate from the settled rules of this Court, I would accordingly reverse the judgment.