Richard A. Weiss, Director Department of Finance Administration P.O. Box 3278 Little Rock AR 72202-3278
Dear Mr. Weiss:
You have requested an Attorney General opinion concerning Act 1460 of 1999.
Before restating and addressing your questions, I will set forth the background information that you have given for your questions.
Background Information
Act 1460 originated as House Bill 1506, which would have amended the definition of "employee," as set forth in A.C.A. § 24-4-101(7)(B), to allow deputy county sheriffs and bailiffs to be members of the Arkansas Public Employees Retirement System (APERS). This bill was subsequently amended. As amended, the title and subtitle were changed, and the original "Section 1," which contained the amended definition of "employee," was replaced with the "Section 1" and "Section 2" that were ultimately enacted as a part of Act 1460. Those sections state:
 SECTION 1. A member of the Arkansas Public Employees' Retirement System must terminate covered employment to be eligible for retirement. A member shall not be terminated from employment for retirement purposes if the person returns to a position that would otherwise be covered within thirty (30) days of the person's effective date of retirement. Persons failing to meet termination requirements shall forfeit their benefits until requirements are met.
 SECTION 2. No benefit enhancement provided for by this act shall be implemented if it would cause the publicly supported retirement system's unfunded actuarial accrued liabilities to exceed a thirty (30) year amortization. No benefit enhancement provided for by this act shall be implemented by any publicly supported system which has unfunded actuarial accrued liabilities being amortized over a period exceeding thirty (30) years until the unfunded actuarial accrued liability is reduced to a level less than the standards prescribed by Arkansas Code, Title 24.
Acts 1999, No. 1460, §§ 1 and 2.
In addition, Act 1460, as ultimately enacted, contained an emergency clause declaring that the Act was necessary to avoid harm to existing members of APERS. The Act was signed into law on April 15, 1999.
Prior to April, 1999, APERS Board Regulation 206 provided that a retiring employee covered by APERS who subsequently returned to covered employment could be rehired by a different covered agency after 30 days of retirement, and by the same agency from which he or she retired after 6 months of retirement, without losing his or her retirement benefits. In accordance with Act 1460, the Board has submitted an amendment to Regulation 206, under which a retiring state employee may return to the agency from which he or she retired after a 30-day waiting period, instead of the 6-month period required under the previous version of Regulation 206.
The Legislative Committee on Administrative Rules and Regulations did not approve amended Regulation 206, but referred it to the Legislative Joint Committee on Public Retirement and Social Security Programs for further review. The Board of APERS subsequently voted to request an actuarial study to determine whether implementation of Act 1460 would violate Section 2 of Act 1460 concerning the unfunded liability of APERS. You state that the study has not been completed.[1]
Questions Presented
In light of the foregoing information, you have presented the following questions:
 (1) Is Act 1460 of 1999 void because it violates Article 5, § 21 of the Arkansas Constitution, which prohibits" bill stripping?"
 (2) Until the actuarial study of Act 1460 is completed, may the Board of APERS disregard Act 1460 and continue to apply the 6-month restriction contained in unamended Regulation 206 as it relates to APERS members who retire from a covered agency and then return to that same agency?
RESPONSE
Question 1 — Is Act 1460 of 1999 void because it violates Article 5, § 21of the Arkansas Constitution, which prohibits "bill stripping?"
Article 5, § 21 of the Arkansas Constitution states:
21. Laws by bills — Amendment.
 No law shall be passed except by bill, and no bill shall be so altered or amended on its passage through either house as to change its original purpose.
ARK. CONST., art. 5, § 21.
In responding to your question, I must begin with the well-established doctrine that until legislation has been challenged and stricken down by a court on constitutional grounds, it is presumed to be constitutional, and the challenger will bear the burden of establishing that it is unconstitutional. Hall v. Tucker, 336 Ark. 112, ___ S.W.2d ___ (1999);Boyd v. Weiss, 333 Ark. 684, 971 S.W.2d 237(1998).
Therefore, only a court can determine definitively whether legislation is constitutional. It is impossible to predict with any degree of certainty how a court will decide issues of this nature. For these reasons, I cannot opine definitively in response to your question. Nevertheless, I will set forth the standards that a court will apply to this issue, upon the basis of which you can assess the viability of a claim levied against Act 1460 of 1999.
Challenges based upon Article 5, § 21 have traditionally been difficult to sustain. Indeed, the Arkansas Supreme Court has never upheld such a challenge.[2] The Arkansas cases involving "bill stripping" challenges are outlined and discussed in Attorney General Opinion No. 95-319, a copy of which is attached for your review. I will not reiterate that discussion here. However, I find it helpful to point out pertinent language from two of those cases that can provide guidance in determining whether particular legislation violates Article 5, § 21. One such helpful quotation can be taken from Vincenheller v. Reagan, 69 Ark. 460,64 S.W. 278 (1901). There, the court upheld amended legislation that "related to, and tended to aid in, the general object of the act indicated in its title. . . ." Id. at 473.
Also helpful is language from Hickey v. State, 114 Ark. 526, 530,170 S.W. 562 (1914). In that case, the court stated that the purpose of Article 5, § 21 was "to forbid amendments which should not be germane to the subject of legislation expressed in the title of the act which it purports to amend." The court has relied on this language from Hickey in other cases, upholding amended legislation that it found to be "germane" to the original bill. See, e.g., Matthews v. Byrd, 187 Ark. 458,60 S.W.2d 909 (1933); Cone v. Garner, 175 Ark. 860, 3 S.W.2d 1 (1927);Reitzammer v. Desha Road Improvement Dist. No. 2, 139 Ark. 168,213 S.W. 773 (1919).
Both of these quotations indicate that a starting point for evaluating amended legislation under Article 5, § 21 is the title of the original bill. Therefore, in assessing the constitutionality of Act 1460 of 1999, it will be helpful to review the original title of House Bill 1506 in the 82nd General Assembly. That original title was stated follows:
 AN ACT TO AMEND ARKANSAS CODE 24-4-101(7)(B) TO PERMIT DEPUTY COUNTY SHERIFFS AND COURT BAILIFFS WHO ARE RETIRED UNDER THE ARKANSAS STATE POLICE RETIREMENT SYSTEM TO BE MEMBERS OF AND ACCUMULATE CREDITED SERVICE IN THE PUBLIC EMPLOYEES RETIREMENT SYSTEM; AND FOR OTHER PURPOSES
House Bill 1506, 82nd General Assembly (original form of title).
Further information about the purpose of the original House Bill 1506 can be gleaned from the subtitle of the bill, which stated:
 TO PERMIT DEPUTY COUNTY SHERIFFS AND COURT BAILIFFS WHO ARE RETIRED UNDER THE STATE POLICE RETIREMENT SYSTEM TO BE MEMBERS OF AND ACCUMULATE CREDITED SERVICE IN THE PUBLIC EMPLOYEES RETIREMENT SYSTEM
House Bill 1506, 82nd General Assembly (original form of subtitle).
It might also be pertinent to an Article 5, § 21 inquiry to note that after House Bill 1506 was amended to the form that was enacted as Act 1460, it contained no provisions concerning deputy county sheriffs and court bailiffs or their participation in APERS. Rather, the amended form of House Bill 1506 and the final, enacted form of Act 1460 were concerned with the subject of the termination of employment and limitations on returning to employment after termination of employment. The title of both amended House Bill 1506 and of Act 1460 stated:
 AN ACT TO DEFINE TERMINATION OF EMPLOYMENT FOR RETIREMENT PURPOSES UNDER THE ARKANSAS PUBLIC EMPLOYEES RETIREMENT SYSTEM; AND FOR OTHER PURPOSES.
Acts 1999, No. 1460 (title); House Bill 1506, 82nd General Assembly (title, as amended).
The subtitle of both documents stated:
 AN ACT TO DEFINE TERMINATION OF EMPLOYMENT FOR RETIREMENT PUPOSES UNDER THE ARKANSAS PUBLIC EMPLOYEES' RETIREMENT SYSTEM.
Acts 1999, No. 1460 (subtitle); House Bill 1506, 82nd General Assembly (subtitle, as amended).
Both amended House Bill 1506 and Act 1460 contained a single substantive provision, which stated:
 SECTION 1. A member of the Arkansas Public Employees' Retirement System must terminate covered employment to be eligible for retirement. A member shall not be terminated from employment for retirement purposes if the person returns to a position that would otherwise be covered within thirty days of the person's effective date of retirement. Persons failing to meet termination requirements shall forfeit their benefits until requirements are met.
Acts 1999, No. 1460, § 1; House Bill 1506, 82nd General Assembly, § 1, as amended.
The original form of House Bill 1506 of the 82nd General Assembly contained no provisions concerning termination of employment or return to employment after termination. Rather, it was limited to amending A.C.A. § 24-4-101(7)(B) to include deputy county sheriffs and bailiffs in the definition of "employee" for purposes of participation in APERS. Nevertheless, both the original form of House Bill 1506 and the ultimate form of Act 1460 of 1999 were concerned with the issue of participation in APERS.
I can draw no conclusions as to how a court might view the divergence between the original form of House Bill 1506 and the form of Act 1460 that was ultimately enacted. However, I note again that the Arkansas Supreme Court has never stricken down legislation on the grounds that it violated Article 5, § 21. Indeed, in Reitzammer v. Desha Road Imp. Dist.No. 2, 139 Ark. 168, 213 S.W.2d 773 (1919), the court upheld legislation, even though the House had amended the original form of the Senate bill by striking everything in the bill after the enacting clause. The court upheld the legislation because it found that the House, even by amending the Senate bill in this extreme way, had not changed the original purpose of the bill.
Accordingly, I conclude that in order for a challenge to Act 1460, based upon Article 5, § 21, to survive, the challenger will have the burden of establishing that the ultimate form of the Act is not germane to the original form of House Bill 1560 and actually changed the original purpose of the bill. Again, only a court can definitively decide this issue.
Question 2 — Until the actuarial study of Act 1460 is completed, may theBoard of APERS disregard Act 1460 and continue to apply the 6-monthrestriction contained in unamended Regulation 206 as it relates to APERSmembers who retire from a covered agency and then return to that sameagency?[3]
It is my opinion that Act 1460 of 1999, by the express terms of Section 2 of the Act, requires that an actuarial determination be made before the provisions of Section 1 of the Act can be implemented.
Section 2 of Act 1460 states:
 SECTION 2. No benefit enhancement provided for by this act shall be implemented if it would cause the publicly supported retirement system's unfunded actuarial accrued liabilities to exceed a thirty (30) year amortization. No benefit enhancement provided for by this act shall be implemented by any publicly supported system which has unfunded actuarial accrued liabilities being amortized over a period exceeding thirty (30) years until the unfunded actuarial accrued liability is reduced to a level less than the standards prescribed by Arkansas Code, Title 24.
Acts 1999, No. 1460, § 2.
The "benefit enhancement" referred to in the above-quoted section of Act 1460 can only be reasonably interpreted to refer to the provisions of Section 1 of the Act, inasmuch as Section 1 is the only substantive provision of the Act. Section 1, again, states:
 SECTION 1. A member of the Arkansas Public Employees' Retirement System must terminate covered employment to be eligible for retirement. A member shall not be terminated from employment for retirement purposes if the person returns to a position that would otherwise be covered within thirty days of the person's effective date of retirement. Persons failing to meet termination requirements shall forfeit their benefits until requirements are met.
Acts 1999, No. 1460, § 1.
Under the language of Section 2 of the Act, it is the above-quoted Section 1 that cannot be implemented until an actuarial determination is made. That is, the new provisions concerning termination of employment and the time limitations on returning to employment after retirement cannot be implemented until an actuarial determination is made.
In the interim until Section 1 can be implemented legally, the law that was in effect prior to the enactment of Act 1460 of 1999 governing termination of employment and time limitations on returning to employment after retirement will remain in effect. See Sutherland on StatutoryConstruction, § 34.01. Prior to the enactment of Act 1460, no statute addressed the specific issue of time limitations on returning to employment after retirement. The governing authority on this issue was therefore APERS Board Regulation 206, which (before being amended to comply with Act 1460) provided that a retiring employee covered by APERS who subsequently returned to covered employment could be rehired by a different covered agency after 30 days of retirement and by the same agency from which he or she retired after 6 months of retirement, without losing retirement benefits. That regulation will remain in effect until an actuarial determination is made that Section 1 of Act 1460 can be implemented.
Accordingly, I conclude that until the actuarial study has been completed and a positive determination is made concerning the implementation of Section 1 of Act 1460, the APERS Board must refrain from implementing Section 1 of the Act, and must, instead, be governed by Regulation 206.
I must note that I would not characterize the above-discussed course of action as "disregarding" Act 1460. On the contrary, I would characterize it as complying with the express directive of Act 1460.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh
[1] After submission of your opinion request, but before issuance of this opinion, it came to our attention that the actuarial study has been completed.
[2] As you note in your correspondence, a challenge that was successful in Pulaski County Chancery Court is currently on appeal to the Arkansas Supreme Court. See Weiss v. Melton.
[3] As previously noted, the actuarial study was completed after submission of your opinion request, but before the issuance of this opinion. Although this fact could be viewed as rendering your question moot, it is my understanding that the answer to this question may nevertheless be pertinent to situations that arise regularly. I will therefore proceed to issue an answer to this question, which was written with the understanding that the study had not been completed.